UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEONDRE EARL SOLOMON,

      Petitioner,                             Case No. 16-13635

v.

                                             HON. AVERN COHN

SHANE PLACE,

      Respondent.

_____/

### MEMORANDUM AND ORDER
### DENYING PETITION FOR WRIT OF HABEAS CORPUS
### AND
### DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Keondre Earl

Solomon, (Petitioner), is a state inmate serving sentences of twenty three to forty years

for two counts of assault with intent to commit murder, M.C.L. § 750.83; two and a half

to five years for carrying a weapon with unlawful intent, M.C.L. § 750.226; and two

years for two counts of felony-firearm, M.C.L. § 750.227b. Petitioner has filed a pro se

petition for writ of habeas corpus claiming that he is incarcerated in violation of his

constitutional rights. Respondent, through the Attorney General's Office, filed a

response contending that Petitioner's claims lack merit. For the reasons that follow, the

petition will be denied.

### II. Background

### A. Facts

The material facts leading to Petitioner's conviction are recited from the Michigan

Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See <u>Wagner v. Smith,</u> 581 F.3d 410, 413 (6th Cir. 2009):

> This case involves the drive-by shooting of Marcel Wilson and Richard Fowler. Wilson and Fowler were driving from the west side to the south side of Saginaw, which was where Fowler lived. At one point they stopped at a gas station. Fowler went into the store while Wilson stayed in the car. While waiting, Wilson noticed defendant pumping gas into a white Dodge Charger. Fowler testified that he went into the store, made a purchase without talking to anyone, and walked straight out. Videotape surveillance footage from the store confirmed that Fowler "ma[de] his purchase and walk[ed] out without any interaction with anyone." The footage also showed that defendant and a man named J'ion Parker left the store after Fowler.

> Wilson testified that as he and Fowler proceeded toward the south side of town, he noticed the Charger coming up behind them, eventually pulling up alongside them. According to Wilson, "that's when it started shooting." Fowler said he and Wilson both tried to duck when the shooting began, but that "there wasn't no stopping them." The emergency room doctor who attended to Wilson and Fowler testified that Wilson had been shot twice and Fowler had been shot once. Both men needed hospitalization and surgery. A witness testified that the car in which Wilson and Fowler had been traveling hit a tree and the Charger hit a fire hydrant.

> Saginaw Police Officer Matthew Gerow interviewed Parker at the police station. Gerow testified that although Parker was "very reluctant" and "definitely did not want to be there," he identified a picture of codefendant Samuel Jackson as the shooter and indicated on a piece of paper that both defendant and Jackson were involved. Gerow also testified that there was a hidden camera and microphone in the interview room, and that at one point when Parker and his mother were alone, the camera recorded Parker whispering to her, "I can't live my life as no snitch, though. I can't do it. It would make me want to kill myself if I was a snitch. They gonna kill me if I snitch." The trial court provided the following limiting instruction regarding Parker's statement: "That's been offered to explain why the witness may have been reluctant with the police, and there may be an issue of credibility as to that witness. And so you may consider the evidence as to the witness credibility." The trial court further explained that "[t]here is no evidence of threats of any kind by either of the defendants here, or of threats or intimidation of any kind, by them or anybody associated with them."

> Gerow also testified regarding a map of Saginaw that was admitted as a trial

exhibit. The map contained annotations indicating where each of the involved parties lived, where the gas station was, and the location of the shooting. Gerow stated that defendant and Parker resided in what would be considered the east side of Saginaw. Gerow testified that he was aware of conflicts between individuals from different parts of the city, and that he had encountered "assaultive-type cases" between individuals from the east and south sides. Gerow then stated that hand gestures made by Jackson and Parker in photographs taken from Parker's Facebook page demonstrated their association with the east side and Jackson was making gestures showing disrespect for the south side. Gerow made it clear that none of the pictures admitted showed defendant displaying hand gestures that would associate him with a particular side of the city. The trial court stated to the jury:

... there was a reference to some assaultive acts on these different parts of town or between these different people associated with these different parts of town.

I caution you that there's nothing in evidence to suggest that these two defendants were involved in these other acts that were referred to by the witness, and—or that these two defendants were associated in any way with those other acts that were referred to by the witness.

People v. Solomon, 2015 WL 1069437, at *1–2.

## B. Procedural History

Following his conviction and sentence, Petitioner filed an appeal of right to the Michigan Court of Appeals which affirmed. People v. Solomon, No. 319248, 2015 WL 1069437 (Mich. Ct. App. Mar. 10, 2015). Petitioner filed an application for leave to appeal to the Michigan Supreme Court, in which he raised the same claims that he raised in his appeal of right before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Solomon, 498 Mich. 886 (2015).

Petitioner now seeks habeas relief, presenting the following claims:

I. Petitioner was denied a fair trial by evidence of alleged gang affiliation that had no relevance to any issue in the trial.

II. Petitioner was denied a fair trial by evidence of alleged witness

3

intimidation where there was no evidence that anyone had done anything
to threaten or influence the witness.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect
to any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
Court of the United States; or
(2)     resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

Id. at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." Id. at 410-11.

 "[A] state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state

court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)(citing Yarborough v.

Alvarado, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a

4

strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

## IV. Analysis

### A. Petitioner's Claims and Court of Appeals' Decision

Petitioner first argues that his right to a fair trial was violated by the admission of irrelevant and prejudicial evidence that he was a member of a gang.

The Michigan Court of Appeals rejected the claim, reasoning:

> The premise of defendant's argument is inaccurate, rendering it without merit. Neither Gerow nor any other witness testified that defendant or any of the involved parties were members of a gang and, unlike in [People v.] Bynum, id. at 616, there was no testimony that defendant acted in conformity with the characteristics of a gang or other group. Rather, Gerow testified that, based on his experience as a Saginaw police officer, he was aware of "assaultive-type" conduct and animosity between residents of the city's east and south sides, and that defendant and Parker resided in what would be considered the east side of town. Also, although Gerow opined that Jackson and Parker—but not defendant—were seen in pictures displaying hand gestures indicating an association with the east side and disrespect for the south side, he did not opine that there were gangs in these areas or that defendant, Jackson, or Parker were members of any gang. Further, the trial court mitigated any unfairly prejudicial impact of this testimony by instructing

the jury that "there's nothing in evidence to suggest that these two defendants were involved in these other acts [i.e., the historically observed "assaultive-type" conduct] ... or that these two defendants were associated in any way with those other acts...." "It is well established that jurors are presumed to follow their instructions." People v. Graves, 458 Mich. 476, 486; 581 NW2d 229 (1998).

Moreover, defendant fails to explain why evidence of his residence on the east side of Saginaw was irrelevant. Evidence that defendant resided on the east side of Saginaw was relevant in explaining why he was willing to participate in an apparent random act of violence against two people whom he did not know, but whom he saw traveling toward the south side of Saginaw. Accordingly, defendant has failed to show that he was convicted on the basis of evidence that was irrelevant or unfairly prejudicial.

People v. Solomon, 2015 WL 1069437, at * 3.

Petitioner also says that the trial court erred in permitting the prosecutor to introduce evidence that Parker whispered to his mother, "I can't live my life as no snitch, though. I can't do it. It would make me want to kill myself if I was a snitch. They gonna kill me if I snitch." Petitioner suggests that this evidence was unfair because it suggested that he or other persons threatened or intimidated Parker and was irrelevant and highly prejudicial.

The Michigan Court of Appeals rejected the claim, explaining:

At trial, certain incriminating statements from Parker's preliminary examination were admitted. Parker invoked his right to remain silent when called as a witness at trial, stating he did not want to testify. The trial court appointed Parker counsel to advise him regarding his Fifth Amendment rights, and his appointed counsel thereafter informed the court that Parker had no memory of what happened and did not want to testify. The court declared Parker unavailable and permitted his preliminary examination testimony to be read into the record.

At the preliminary examination, Parker testified that he was traveling in a car with defendant and Jackson on the night in question, but he denied that he saw Jackson shoot a gun. Parker testified that when he, Jackson, and defendant left the gas station, they attempted to pass a

slow-traveling vehicle and crashed when that vehicle bumped their vehicle. He testified that he did not know whether someone in his car's front seat began shooting and that he heard shots only after he got out of the car following the crash and began running home. Parker admitted, however, that he had previously told a police detective that Jackson began shooting at another vehicle while he (Parker) was sitting in the backseat and defendant was driving.

Given Parker's conflicting statements, his credibility was highly relevant. "[T]he credibility of a witness is an issue of the utmost importance in every case," and "evidence of a witness' bias or interest in a case is highly relevant to his credibility." People v. Mumford, 183 Mich.App 149, 152; 455 NW2d 51 (1990) (citation and internal quotation marks omitted). Evidence that Parker stated before his preliminary examination that he did not want to "snitch" was highly probative regarding this credibility.

Defendant complains that notwithstanding the relevance of Parker's reluctance to talk with police, the probative value of the phrase "[t]hey gonna kill me if I snitch" was substantially outweighed by the danger of unfair prejudice under MRE 403 because it suggested that Parker had been threatened. Defendant also argues that reversal is warranted because the prosecutor did not introduce evidence connecting the threats to defendant.

As discussed, the phrase "[t]hey gonna kill me if I snitch" was highly relevant in this case, because it spoke directly to Parker's potential bias. Moreover, contrary to defendant's assertion, the statement did not have an unfairly prejudicial effect because it did not demonstrate that any threats were made against Parker. Indeed, Parker did not say that anyone told him he would be killed if he snitched, let alone that defendant did. Rather, his statement merely reflected his opinion, however informed or exaggerated. Moreover, the trial court mitigated any possible prejudicial impact of Parker's statements by instructing the jury that "[t]here is no evidence of threats of any kind by either of the defendants here, or of threats or intimidation of any kind, by them or anybody associated with them." See Graves, 458 Mich. at 486. Accordingly, the trial court did not err in admitting Parker's statements.

People v. Solomon, 2015 WL 1069437, at * 3–4.

## B. Resolution

Petitioner is not entitled to relief on either of his claims. A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Seymour v. Walker, 224 F. 3d 542, 552 (6th Cir. 2000). "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) (quoting Montana v. Egelhoff, 518 U.S. 37, 43 (1996)).

Here, Petitioner's first claim that he was denied a fair trial by the admission evidence regarding gang affiliation cannot form the basis for habeas relief. First, it involves a state law evidentiary issue upon which habeas relief cannot be granted. Second, Petitioner's argument that the evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle him to habeas relief. The Sixth Circuit indicated that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process." Blackmon v. Booker, 696 F. 3d 536, 551 (6th Cir. 2012)(emphasis original).

Finally, the Michigan Court of Appeals concluded that evidence that Petitioner was from the east side of Saginaw was relevant to explain why he would engage in a violent act against strangers whom he saw driving towards the south side of Saginaw.

8

The Court must defer to this reasonable determination. Even assuming that this could be construed as evidence of gang membership, the admission of this evidence did not render petitioner's trial fundamentally unfair because such evidence was relevant to Petitioner's criminal motive. In short, Petitioner was not deprived of a fair trial by the admission of this evidence.

As to Petitioner's second claim, he is not entitled to habeas relief because the Michigan Court of Appeals reasonably concluded that evidence that Parker feared being labeled a snitch was relevant and admissible because it explained Parker's inconsistent statements and thus dealt with his credibility as a witness. Moreover, Petitioner cannot show that he was prejudiced by Parker's remarks that he feared being labeled a snitch because there was no evidence presented that he had been threatened by Petitioner or any of his associates. Accordingly, the admission of this evidence did not deprive Petitioner of a fair trial.

### V.  Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to grant a certificate of appealability under 28

U.S.C. § 2253(c)(2). [1] See <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

      SO ORDERED.


                    <u>s/Avern Cohn</u>
                    AVERN COHN
                    UNITED STATES DISTRICT JUDGE

Dated:  June 30, 2017


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 30, 2017.


                    <u>s/Deborah Tofil</u>
                    Case Manager

---

[1] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.